UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MOVE MERCH, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:14-CV-878 CAS |
| AMARU/AWA MERCHANDISING, INC., AMARU ENTERTAINMENT, INC., and DECOSTA MARKETING, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Amaru-AWA Merchandising, Inc. and Amaru Entertainment, Inc.'s (the "Amaru defendants") motion to dismiss for lack of personal jurisdiction or for improper venue or, in the alternative, motion to transfer for improper venue or for convenience. Plaintiff Move Merch, LLC ("plaintiff") opposes the motion. For the following reasons, the Amaru defendants' motion to dismiss for lack of personal jurisdiction will be granted and its alternative motion to transfer for improper venue or for convenience will be denied as moot.

## I. Background

This case arises out of the licensing and on-line sale of t-shirts and other merchandise bearing the intellectual property of the late entertainer Tupac Shakur. According to the complaint, after Mr. Shakur's death, his mother Afeni Shakur founded defendant Amaru Entertainment, Inc., which exclusively owns the intellectual property rights of the late entertainer. Defendant Amaru-AWA Merchandising, Inc. is a joint venture between defendant Amaru Entertainment, Inc. and an individual named Rick Barlowe. Amaru-AWA Merchandising, Inc. obtained an exclusive license

of the late Tupac Shakur's intellectual property rights from Amaru Entertainment, Inc. for the purpose of furthering the entertainer's legacy. (Compl. at ¶¶ 12-14).

Defendant DeCosta Marketing, Inc. ("DeCosta") is a marketing company. According to the complaint, the Amaru defendants contracted with defendant DeCosta to develop and maintain a full social media network to further the legacy of Tupac Shakur, including developing a personalized website, www.2pac.com ("Tupac website") and a Facebook page.

Plaintiff Move Merch, LLC is an entertainment merchandising company operating out of Overland, Missouri that "creates, produces, and distributes high quality merchandise on behalf of its clients." (Compl. ¶ 18). On June 1, 2012, plaintiff signed an "Online Sales License Agreement" ("Online Sales Agreement" or "Agreement") granting it the exclusive right and license to use intellectual property of Tupac Shakur to design, manufacture and sell t-shirts, fleece tops, and headwear online through the Tupac website and the official Tupac Shakur Facebook page. Plaintiff was recognized as the official online licensee of Tupac Shakur merchandise.

The parties disagree as to which entities were party to the Online Sales Agreement. The Agreement states:

> THIS AGREEMENT is entered . . . by and between Amaru/AWA Merchandising, c/o DECOSTA Marketing, Inc., a corporation incorporated in the province of Ontario, Canada, with its principal office located at 2126 Burnhamthrope Rd. W, Box 98039 Mississauga, ON, L5L 3A0 ("Licensor") and Move Merch LLC, a Missouri limited liability company, having its principal office at 1525 Fairview Industrial, Overland, MO 63132 ("Licensee").

Compl., Ex. 1.

The Agreement is signed as follows (handwritten portions of signature block are shown here in italics):

| LICENSOR: | LICENSEE: |
|---|---|
| Amaru/AWA Merchandising<br>BY DECOSTA MARKETING INC. | MOVE MERCH LLC |
| By: /s/ *Jesse DeCosta* | By: /s/ *Nick Loftis* |
| Name: *JESSE DECOSTA* | Name: *Nick Loftis* |
| Title: *PRESIDENT* | Title: *President* |
| *—PENDING RECEIPT OF<br>WIRE TRANSFER ON<br>JUNE 1ST, 2012.* | |

In accordance with the Agreement, plaintiff alleges it paid Amaru-AWA Merchandising, Inc. a non-refundable advance of $75,000 against its obligation to pay future royalties. The term of the Agreement was three years, June 1, 2012 through May 31, 2015. As to termination rights, the Agreement states:

**10. TERMINATION**

A. This Agreement may be terminated by either party upon thirty (30) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the thirty (30) day period, the breaching party fails to cure such breach.

Compl., Ex. 1 at 4.

Beginning on June 16, 2012, plaintiff sold Tupac Shakur merchandise through the Tupac website and the site's corresponding Facebook page. Plaintiff continued to sell merchandise through these channels until February 19, 2014. According to the complaint, on February 19, 2014, defendants terminated the agreement without cause and in violation of the agreement.

On May 7, 2014, plaintiffs filed this complaint in four counts: (1) Breach of Contract by all defendants; (2) Unjust Enrichment by all defendants; (3) in the alternative to Count I, Tortious

Interference by defendant Amaru Entertainment, Inc.; and (4) in the alternative to Count II, Tortious interference by defendant Amaru Entertainment, Inc. In response, the Amaru defendants have filed the instant motion to dismiss for lack of personal jurisdiction or for improper venue or, in the alternative, motion to transfer for improper venue or for convenience.

## II. Legal Standard

"If jurisdiction is controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The plaintiff's prima facie showing must be tested, not by the pleading alone, but by the affidavits and exhibits presented with the motions and opposition thereto. Id. (quotation and citation omitted)." Coen v. Coen, 509 F.3d 900, 904-05 (8th Cir. 2007); see also Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087 (8th Cir. 2008). Although the court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in plaintiff's favor, the party seeking to establish the court's personal jurisdiciton carries the burden of proof and that burden does not shift to the party challenging jurisdiction. Fastpath, Inc. v. Arbela Tech. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

## III. Discussion

### A. Missouri's Long-Arm Statue

"Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" K-V

Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

In their motion to dismiss, the Amaru defendants argue the Missouri long-arm statute does not allow for personal jurisdiction because they have not transacted business in the state and have not entered into a contract in the state. Contrary to the allegations in the complaint, the Amaru defendants state they did not authorize DeCosta to enter into the Online Sales Agreement on their behalf; they never granted authority to defendant DeCosta to act as their agent in Missouri or otherwise; they did not approve of the Agreement; and they never granted plaintiff any rights at all. The Amaru defendants specifically deny delegating any authority to DeCosta to act as their agent and to enter into the Online Sales Agreement with plaintiff. These facts are wholly supported by the declarations submitted by Afeni Shakur, the mother of Tupac Shakur and the President and sole shareholder of defendant Amaru Entertainment, Inc., and Rick Barlowe, the President of defendant Amaru-AWA Merchandising, Inc. (See Docs. 19 and 21).

To further remove any doubt that DeCosta had authority to act as the Amaru defendants' agent to enter into the Online Sales Agreement, the Amaru defendants have submitted as evidence the marketing agreement between Amaru-AWA Merchandising, Inc. and DeCosta Marketing, Inc. (the "Marketing Agreement") (Supp. Barlowe Decl., Doc. 33, Ex. 1). The Marketing Agreement gives DeCosta the right to develop a "full social network and online media strategy" and a royalty free license to use the intellectual property owned by Amaru on the websites. (Id. at ¶¶ 1-2). It also includes a provision for DeCosta to retain as compensation a portion of "all merchandise sales." (Id. at ¶ 4). But the agreement does not provide for DeCosta to act as the Amaru defendants' agent in licensing their intellectual property rights to a third-party vendor of Tupac Shakur merchandise. The

Marketing Agreement does not provide actual authority for DeCosta to enter into the Online Sales Agreement.

Plaintiff focuses its personal jurisdiction argument on an agency theory, stating that the Court may exercise personal jurisdiction over the Amaru defendants through the act of their agent, DeCosta. For support, plaintiff relies on the allegations in its complaint, stating: DeCosta engaged plaintiff to enter into the Online Sales Agreement; DeCosta represented itself as a partner and agent of the Amaru defendants; the Online Sales Agreement states that it is between "Amaru-AWA Merchandising as a Licensor and Move Merch as a Licensee"; and the Online Sales Agreement states that Amaru-AWA Merchandising, Inc. owns or controls all intellectual property rights relating to Tupac Shakur. Also, plaintiff submits the affidavit of its President, Nick Loftis, who states that DeCosta represented itself as having authority to contract on behalf of the Amaru defendants and having authority to authorize the production of Tupac Shakur licensed merchandise. (Loftis Decl. at ¶¶ 8-9). Plaintiff states that it was given access to the exclusive intellectual property of the Amaru defendants to design and market the Tupac merchandise, and that it sold the Tupac merchandise in compliance with the Agreement on websites owned and controlled by the Amaru defendants for nearly two years. Plaintiff mailed samples of its merchandise to the Amaru defendants via Rick Barlowe. (Pl.'s Opp'n 6-8).[1] "[N]ot only was DeCosta an agent and partner of Amaru-AWA acting with actual and apparent authority to contract with Move Merch, the Amaru defendants made their own intellectual property and websites available to Move Merch for the purpose of marketing and selling Licensed Products." Id. at 8.

---

[1]Mr. Barlowe responds in his supplemental declaration: "Neither I nor anyone from AA Merchandising ever communicated with Nick Loftis, or any representative of Move Merch, for approvals of merchandise or otherwise." See Supp. Barlowe Decl. at ¶ 10.

Plaintiff's argument relies on the apparent authority of DeCosta to enter into the Online Sales Agreement on behalf of its alleged principal, Amaru-AWA Merchandising, Inc. The Court has no doubt that DeCosta represented itself as having the authority to grant plaintiff the exclusive right and license to sell Tupac Shakur merchandise through its websites. The Court need look no further than the Agreement. The first paragraph specifically states the agreement is entered into by "Amaru-AWA Merchandising, c/o DECOSTA Marketing, Inc., a corporation incorporated in the province of Ontario Canada." (Compl., Ex. 1 at 1). It is signed by the President of DeCosta Marketing, Jesse DeCosta, under the signature block heading that reads: "**LICENSOR:** Amaru-AWA Merchandising BY DECOSTA MARKETING INC." (Id. at 7).

While there is significant evidence that defendant DeCosta represented itself as an agent of the Amaru defendants, this fact is not necessarily relevant to the analysis of the Court's personal jurisdiction over the Amaru defendants. Under Missouri law apparent agency can only be found based on the actions of the principal. "Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, '[a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.' Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc., 932 S.W.2d 877, 879 (Mo. Ct. App. 1996). We also note that express authority and apparent authority arise from the acts of the principal, not the alleged agent. United Missouri Bank v. Beard, 877 S.W.2d 237, 240-41 (Mo. Ct. App. 1994)." Romak USA, Inc., v. Rich, 384 F.3d 979, 985 (8th Cir. 2004). "Put another way, it is authority which the principal, by his acts or representations, has led third persons to believe has been conferred upon the agent." United Missouri Bank, 877 S.W.2d at 240.

The Court finds that plaintiff has not met its burden of proving the Amaru defendants have transacted business, committed a tortious act, or entered into a contract that would submit them to the jurisdiction of this Court under the Missouri long-arm statute. It bears repeating that the undisputed evidence submitted by the Amaru defendants both by declarations and by the Marketing Agreement with DeCosta shows that the Amaru defendants never authorized DeCosta to enter into any third-party contracts and were not aware that DeCosta had entered into any agreements on behalf of the Amaru defendants. (Supp. Barlowe Decl. at ¶ 8). Nor has plaintiff presented evidence of any acts of the Amaru defendants that caused plaintiff to reasonably believe DeCosta had authority to enter into the Online Sales Agreement.[2] Because plaintiff has not met its burden of proof regarding the fact and scope of the agency relationship between defendant DeCosta and the Amaru defendants, the Court cannot find any acts by which it could exercise personal jurisdiction over the Amaru defendants pursuant to Missouri's long-arm statute.

B. <u>Minimum Contacts Required for Due Process</u>

Plaintiff also has not shown the Amaru defendants had sufficient minimum contacts with this forum that the exercise of personal jurisdiction would comport with federal due process. To evaluate the sufficiency of a defendant's contacts, the Court considers five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. <u>Bell Paper Box, Inc. v. Trans</u>

---

[2]Plaintiff attaches to the Nick Loftis declaration a bank statement of defendant DeCosta showing a transfer of $10,029.14 to "AMARU AWA MERCH" on June 8, 2012. Although plaintiff claims this money is a portion of the $75,000 advance plaintiff paid pursuant to the Online Sales Agreement, there is no evidence from which the Court can make this determination.

Western Polymers, 53 F.3d 920, 922 (8th Cir. 1995). Of these factors, the first three are of "primary importance" while the last two are "secondary factors." Digi-Tel Holdings Inc. v. Proteq Telecomm., 89 F.3d 519, 523 (8th Cir. 1996).

In its surresponse, plaintiff argues the Amaru defendants are subject to general personal jurisdiction based on their advertising and promotional activities in Missouri and the business conducted through their interactive website. "Amaru Defendants maintain interactive websites and social media pages through which they . . . market the memory of Tupac Shakur and also allow for the purchase of Tupac Shakur licensed products." (Pl. Surresp. at 3). Plaintiff argues this point in a conclusory fashion without providing any evidence that any Missouri resident has purchased any Tupac Shakur licensed products or even visited the website. See e.g., Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 747 (8th Cir. 2011) (declining to exercise personal jurisdiction where no evidence that forum resident ever accessed the website in question). Moreover, the allegations pertain to activities of DeCosta, the marketing company the Amaru defendants contracted with to "develop and maintain a full social network and online media strategy . . . includ[ing] creating new content for Tupac Shakur sites including Facebook, Twitter and 2PAC.com." (Marketing Agreement, Defs. Surreply, Ex. 1 at 1).

Through the affidavits of Afeni Shakur and Rick Barlowe, the Amaru defendants state that they are not citizens of Missouri; neither they nor any employee have entered into Missouri to conduct business or otherwise; they have no business in Missouri; no agent for service of process in Missouri; and no property, employees, offices, telephone numbers, or bank accounts in Missouri. (Shakur Aff. at ¶¶ 4-12; Barlowe Aff. at ¶¶ 8-15). Plaintiff has not shown the Amaru defendants have purposefully availed themselves of the privilege of conducting activities in Missouri.

Based on the foregoing, the Court finds that exercising personal jurisdiction over the Amaru defendants in Missouri would offend traditional notions of fair play and substantial justice. See Bell Paper, 53 F.3d at 921. The Court will grant the Amaru defendants' motion to dismiss based on lack of personal jurisdiction.

In the alternative, the Amaru defendants assert that venue is improper and move the Court, if it does not grant the motion to dismiss, to transfer this action under 28 U.S.C. § 1406(a) to the United States District Court for the Central District of California. Because the Court grants the Amaru defendants' motion to dismiss on personal jurisdiction grounds, its motion for transfer is moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Amaru-Awa Merchandising, Inc. and Amaru Entertainment, Inc.'s motion to dismiss for lack of personal jurisdiction or for improper venue or, in the alternative, motion to transfer for improper venue or for convenience is **GRANTED in part** and **DENIED as moot in part**. The motion is granted to the extent it seeks dismissal for lack of personal jurisdiction, and denied as moot in all other respects. [Doc. 16]

An Order of Partial Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 4th day of March, 2015.